FILED

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA** 99 SEP 22  AM 9: 22
**EASTERN DIVISION**

U.S. DISTRICT COURT
N.D. OF ALABAMA

|  |  |
|---|---|
| BUSINESS INSURANCE COMPANY, INC., | ) ) |
| Plaintiff, | ) ) ) |
| vs. | CV 96-PT-2853-E |
| LOUISIANA CHEMICAL EQUIPMENT COMPANY, LLC, and AUBREY DALE ROBERSON, an individual, | ) ) ) ) ) ) |
| Defendants. | ) |

**ENTERED**

SEP 2 2 1999

### MEMORANDUM OPINION

This cause comes to be heard on third-party defendant Travelers Indemnity Company of Illinois' ("Travelers") Motion for Summary Judgment filed on March 2, 1999, and plaintiff Business Insurance Company, Inc.'s ("BICO") Cross Motion for Summary Judgment filed on April 5, 1999 on behalf of defendant Louisiana Chemical Equipment Co. ("Louisiana Chemical").

The dispute in this case centers on the question of whether or not Travelers, under a workers compensation insurance policy covering Louisiana Chemical for injuries to its employees under the workers compensation statutes of the State of Illinois, is responsible for providing workers compensation coverage and benefits to a Louisiana Chemical employee, Aubrey Dale Roberson ("Roberson"), who was injured in an automobile accident in Alabama while returning home following the completion of a work project in Illinois.

1



**I. Summary of the Claims**

Travelers contends that although its policy issued to Louisiana Chemical was in full force and effect at the time of the accident, coverage is not invoked under the policy because the Travelers policy clearly and explicitly provides workers compensation coverage only for workers compensation benefits provided by the laws of the State of Illinois.  Travelers claims that neither Roberson himself nor the accident generally are subject to the workers compensation laws of the State of Illinois and that the incident and injury are, therefore, not covered under the Travelers policy.  Travelers further notes that Roberson never sought workers compensation benefits under Illinois law, but only under Alabama law.

BICO, on the other hand, argues that Travelers is, under Illinois law, estopped from relying on its policy defenses as Travelers neither defended the Alabama claim under a reservation of rights nor filed a declaratory judgment action.  According to BICO, Travelers' failure to take either of the aforementioned courses of action mandates the application of the Illinois doctrine of estoppel for the wrongful refusal to defend.  Alternatively, BICO also suggests that factual issues exist regarding the question of whether or not Roberson's work was "principally localized" in Illinois according to Illinois law.

**II. Factual Background**

Most of the facts in this case are undisputed.  The case centers around a workers compensation insurance policy provided by

2

Travelers (the "Travelers Policy") to Louisiana Chemical covering those workers compensation benefits Louisiana Chemical might owe under the workers compensation laws of the state of Illinois. The Travelers Policy, #6JUB-177X740-A-96, was in effect from May 18, 1996 to May 18, 1997. Prior to and during the time the Travelers Policy was in effect, Louisiana Chemical was also covered under a general workers compensation policy provided by BICO. The parties both acknowledge that the Travelers policy explicitly provides coverage to Louisiana Chemical only for the workers compensation benefits provided by Illinois law.

The purpose behind Louisiana Chemical's purchase of the Travelers Policy was the fulfillment of a "Dismantling Agreement" between Louisiana Chemical and Hydromet, Inc., wherein Louisiana Chemical agreed to undertake the dismantling and removal of certain equipment at Hydromet's Illinois facility and to purchase additional insurance for the work naming Hydromet as an insured. The project was to take no more than sixty (60) days and, in fact, took about thirty (30).

Roberson, a full-time Louisiana Chemical employee, was assigned to supervise the Illinois project at the Hydromet facility. He was sent to Illinois in early June of 1996, and his work there was completed on or before July 2, 1996. On July 2, 1996, Roberson, a domiciliary and resident of Alabama, was injured in an automobile accident in Alabama while returning to his home from the temporary job site in Illinois.

Louisiana Chemical filed an Employers First Report of Injury with the workers compensation authorities for the State of Texas and put its workers compensation carrier, BICO, on notice of a

3

claim on July 4, 1996.   BICO sent Louisiana Chemical a letter
stating that it reserved its rights to deny the claim and declining
to make immediate payment of the workers compensation benefits
claimed by Roberson.   In lieu of the benefit payments denied by
BICO, Louisiana Chemical began making payments to Roberson.

Though Louisiana Chemical initiated administrative procedures
in Texas to determine the extent of its obligation to provide
workers compensation benefits under the Texas statutes, Roberson
elected to seek workers compensation benefits under the Alabama
Workers Compensation Act instead.   The Texas workers compensation
authorities terminated the Texas proceeding upon learning of
Roberson's election to seek benefits under Alabama, rather than
Texas, law.   Roberson intiated his action for workers compensation
benefits in the Circuit Court of Talladega County, Alabama.   Though
BICO disputed coverage and made no payments for several months, it
later assumed responsibility to pay the medical and weekly benefits
called for under the Alabama Workers Compensation Act.   BICO has
also assumed the defense of Louisiana Chemical in the action
brought by Roberson in Alabama.

BICO filed a declaratory judgment action against Louisiana
Chemical   on   November   1,   1996,   alleging   that   the   workers
compensation insurance policy issued by BICO to Louisiana Chemical
is   void   ab   initio   due   to   alleged   misrepresentations   in   the
application.   A settlement was later reached between BICO and
Louisiana Chemical whereby BICO would pay the disputed benefits to
Roberson and Louisiana Chemical would pursue Travelers as a third-
party defendant.

Travelers'   claims   department   was   notified   of   Roberson's

4

accident and the potential claim in December of 1996, approximately five months after the accident. Travelers' claims handlers allegedly investigated the incident and concluded that Illinois did not have jurisdiction over the accident and that there was, therefore, no coverage for Roberson under the Illinois workers compensation law.

Roberson's contract for employment with Louisiana Chemical was concluded as a result of communications that took place between persons in Texas, Louisiana, and/or Alabama. None of the contacts regarding Roberson's initial employment contract were initiated or received in the state of Illinois. In his capacity as a full-time Louisiana Chemical employee, Roberson could be assigned to projects in any state where the company conducted business. Louisiana Chemical treated Roberson as an employee of its LaPorte, Texas office for the purposes of government reporting and its books and records. Roberson received his wages via mail at his Alabama address from Louisiana Chemical's Texas offices. Travelers notes that Roberson has not sought workers compensation benefits under the Illinois workers compensation statutes, that neither Roberson nor Louisiana Chemical have initiated proceedings in Illinois to obtain benefits under the Illinois statutes, and that Louisiana Chemical has not filed the necessary reports with the Illinois workers compensation authorities to invoke the jurisdiction of the Illinois workers compensation statutes.

## III. Travelers' Legal Arguments

### A. Illinois Workers Compensation Law: Lack of Jurisdiction

Travelers asserts that insurance may be invoked under a

5

workers compensation policy only if an employee of the insured
becomes entitled to workers compensation benefits under the workers
compensation statutes of a state named in the insurance policy.
The only state named on the Travelers policy is Illinois.   The
Information Page of the Travelers Policy, Item 3.A, states: "Part
One of the policy applies to the Workers Compensation Law of the
state(s) listed here"; the only state listed is "IL," Illinois.
Part One, Section B, on page 1 states: "We will pay promptly when
due the benefits required of you by the workers compensation law."
The term "workers compensation law" is defined in the policy's
"General" section on page 1, subsection C, as follows: "Workers
Compensation Law means the workers or workmen's compensation law
and occupational disease law of each state or territory named in
Item 3.A of the Information Page."   Travelers contends that neither
Roberson nor his accident fall under the jurisdiction of the
workers compensation laws of the State of Illinois and that,
therefore, coverage is not invoked under the Travelers Policy,
which clearly provides for compensation only for those workers
compensation benefits provided by Illinois law.

Travelers argues that, according to the statute, the Illinois
workers compensation statutes control whether any workers
compensation claim is covered under the policy.   An injured worker
must meet the Illinois statute's definition of "employee" in order
to come within the jurisdiction of the Illinois Workers
Compensation Act.   The term "employee," under the Illinois Act,
applies to those claimants whose:

(1)   contract for hire is made in Illinois;

(2)   accident-in-question occurs in Illinois; or

6

(3) employment is principally localized in Illinois, regardless of where the contract for hire was made or where the accident occurred.

820 ILCS 305/1.

According to Travelers, Roberson is clearly not an "employee" for the purposes of the statute under the first two criteria; the contract was not made in Illinois and the accident took place in Alabama. Thus, the only way Roberson could possibly be an "employee" under the Illinois Act, and thus the only way Louisiana Chemical could make valid a claim to Travelers for benefits due to him, is if his employment was principally localized in Illinois.

Travelers maintains that Illinois courts and common sense clearly indicate that Roberson's employment was not principally localized in Illinois. Travelers notes that Roberson was hired in Texas, treated as a Texas employee, assigned to jobs in various states from Louisiana Chemical's Texas facility, and was only on a temporary work assignment in Illinois that was expected to last no more than sixty days and actually lasted about thirty.

Travelers directs the court's attention to Patton v. Industrial Comm., 498 N.E.2d 539 (Ill. Ct. App. 1986), as the leading Illinois case interpreting the phrase "principally localized." In Patton, the court examined the legislative history of the Illinois Workers Compensation Act and determined that the Illinois legislature intended the term to be defined as in the Workmen's Compensation and Rehabilitation Law (revised) (hereinafter the "Model Act") as drafted by the Advisory Committee on Workmen's Compensation Laws of the Council of State Governments:

The Model Act defines the term "principally localized" as follows: (4) A person's employment is principally localized in this or another state when (1) his employer

7

> has a place of business in this or such other State and
> he regularly works at or from such place of business, or
> (2) if clause (1) foregoing is not applicable, he is
> domiciled and spends a substantial part of his working
> time in the service of his employer in this or such other
> State (4 Larson, Workmen's Compensation Law app. H 629,
> 649-50 (Model Act) (1986).)

Patton, 498 N.E.2d at 543.   Travelers maintains that Louisiana

Chemical does not have a place of business in Illinois, claiming

that Louisiana Chemical's presence in the State at the time of

Roberson's injury was limited to the presence of its employees at

the Hydromet worksite.   Travelers points out that there is no

evidence in this case that Louisiana Chemical had any base of

operations at the site or that Louisiana Chemical operated anything

akin to an office at the Hydromet facility.[1]

The Patton court, in examining the Model Code's definition,

concluded that:

> . . . [I]t is evident that the definition
> encompassed within the Code focuses first, and
> foremost, upon the situs where the employment
> relationship is centered.   Only in the event that
> such situs cannot be established is the alternative
> test involving domicile and substantial work time

---

[1] BICO contends that Travelers must show, as a matter of
law, that Roberson's employment was not "principally localized"
in Illinois, and claims that, in failing to clearly establish
exactly what kind of operation Louisiana Chemical had at the
Hydromet facility, Travelers has failed to carry its burden and
has left open a question of fact.   Travelers, however, notes that
BICO has assumed Louisiana Chemical's claim and has access to
Louisiana Chemical's records.   Travelers points out that if any
office-type arrangement had existed in Illinois, BICO could make
such a showing.   As BICO has failed to do so and as Travelers has
asserted the lack of any such arrangement, Travelers claims to
have shown that it did not exist.

8

to be considered.

Patton, 498 N.E.2d at 543.  In Montgomery Tank Lines v. Industrial Comm., 640 N.E.2d 296 (Ill. Ct. App. 1994), the court outlined the five factors weighed by the Patton court in determining situs:

> (1) where the employment relationship is centered, i.e., the center from which the employee works;
>
> (2) the source of remuneration to the employee;
>
> (3) where the employment contract was formed;
>
> (4) the existence of a facility from which the employee received his assignments and is other controlled; and
>
> (5) the understanding that the employee will return to that facility after the out-of-state assignment is complete.

Montgomery Tank Lines, 640 N.E.2d at 299.  The Montgomery Tank Lines court also noted that, "the quantity of time an employee spends in a particular locale could be a factor in determining the principal localization of employment, but [is] not controlling." Id.

Travelers argues that the Patton/Montgomery Tank Lines factors clearly indicate that Roberson, as an employee, was not principally localized in Illinois.  Factors (1)-(4), in fact, all point to Texas as the principal locality of his employment.  Roberson's assignments came from the Texas office, his pay checks came from Texas, Roberson traveled to Texas to complete the paperwork for his employment contract, and he was, for paperwork purposes, centered in Texas. As to the fifth factor, Roberson was not returning to an Illinois employment facility, but to his home. His work in Illinois had been completed. Thus, according to Travelers, not a single factor weighs in favor of a finding that Illinois was the principal

9

locality of Roberson's work.

As Roberson cannot be considered an "employee" under the tests noted above, Travelers argues, the State of Illinois could not exercise jurisdiction over the injury under its workers compensation laws.[2]  Thus, because the Travelers policy covers only those injuries that are eligible for benefits under Illinois workers compensation laws, Travelers contends that it owes nothing to Louisiana Chemical, BICO, or Roberson because it could have never been required to pay benefits to Roberson.

## B. BICO's Standing

Travelers also argues that BICO lacks the requisite standing to oppose its summary judgment motion in that BICO is not the

---

[2] Travelers, in responding to BICO's argument based on Illinois insurance law, makes a choice of law argument, claiming that although Illinois workers compensation law should be used to determine whether benefits should be paid, Illinois contract and insurance law should not apply to the policy. · Travelers notes that "Alabama's choice of law rule provides that the law of the state wherein the contract was executed shall govern the interpretation of the contract."  Allen, Alabama Liability Insurance Handbook S 3-4 (Michie 1996).  Travelers also points out that the contract was not executed in Illinois, that the policy was not issued from Illinois, and states that "other than using the formulas set out in Illinois statutes as the mechanism by which employee benefits would be calculated, the contract that Travelers and Louisiana Chemical entered into has no connection with the State of Illinois.  Travelers thus argues that Louisiana or Texas law should govern any interpretation of the contract, but cites no authority for its contention.  Travelers makes this argument despite having acknowledged that Illinois workers compensation law governs the determination of whether benefits are due and whether coverage is triggered under the policy. Travelers characterizes the policy's reference to Illinois workers compensation law as a mere establishment of a standard, and thus urges this court to apply Illinois workers compensation laws to the determination of whether coverage is triggered or benefits are due and to apply the law of another state to the rest of the contract.

10

policyholder in this case and it thus lacks the ability to claim coverage under Travelers' policy in favor of Louisiana Chemical. Travelers notes that the sole complaint against Travelers in this case is the claim filed by Louisiana Chemical which alleges that Travelers owes workers compensation coverage to Roberson, Louisiana Chemical's employee. Travelers notes that under the facts as set out in the parties' admissions it is undisputed that Louisiana Chemical has been made whole. Travelers also contends that the undisputed facts relieve Travelers of any liability to Louisiana Chemical or Roberson. As Louisiana Chemical, itself, has filed nothing in opposition to Travelers' motion for summary judgment, Travelers contends that the motion should be granted.

BICO points out that according to a Settlement Agreement and Release entered into on August 4, 1997, Louisiana Chemical agreed "to assign to BICO all of its rights against others which [Louisiana Chemical] may have regarding the . . . Roberson matter, including but not limited to, any claim [Louisiana Chemical] may have under a policy of insurance issued by The Travelers Insurance Company for Workers Compensation coverage for the State of Illinois." On May 27, 1998, BICO filed an amendment to its original complaint adopting the allegations contained in Louisiana Chemical's Third-Party Complaint against Travelers. Travelers has not challenged the validity of the assignment in this case. As the assignment includes "any claim" against Travelers pertaining to the Roberson matter, BICO contends that it has standing to invoke the potential coverage of Travelers and is entitled to summary judgment in its favor on the grounds that Travelers failed to provide a defense under its policy as BICO claims was required under Illinois

11

law.

## IV. BICO's Legal Arguments

As stated above, BICO, on behalf of Louisiana Chemical, makes two arguments opposing Travelers' position. The first is based on the Illinois doctrine of estoppel for wrongful refusal to defend. BICO's second contention is that a factual question exists with regard to whether the Illinois workers compensation statutes may be applied to Roberson's injury.

### A. The Illinois Doctrine of Estoppel for Wrongful Refusal to Defend

In <u>Chandler v. Doherty</u>, 702 N.E.2d 634 (Ill. Ct. App. 1998), the court, in examining the duty to defend as established by Illinois law, noted that:

> Under Illinois law an insured contracts for and has the right to expect the performance of two separate and distinct duties from an insurer: (1) the duty to defend him if a claim is made against him; and (2) the duty to indemnify him if he is found legally liable for the occurrence of a covered risk. The duty to defend an insured is much broader than the duty to indemnify. In Illinois, an insurer may be required to defend its insured even when there will ultimately be no obligation to indemnify.

702 N.E.2d at 637 (citations omitted). In determining when the duty to defend arises, the Illinois Supreme Court has stated:

> It is now well-established law that, in determining whether an insurer has a duty to defend its insured, the court must look <u>to the allegations in the underlying complaint and compare these allegations to the relevant coverage provisions of the insurance policy. If the facts alleged in the underlying complaint fall within, or</u>

12

> potentially within the policy's coverage provisions,
> then the insurer has a duty to defend the insured in the
> underlying action. (Emphasis added).

_Crum & Forester Mangers Corp. v. Resolution Trust Corp._, 620 N.E.2d

1073, 1080 (Ill. 1993) (citations omitted). The _Chandler_ court

elaborated on the amount and quality of the notice that the

complaint must convey to trigger the duty to defend, stating that:

> The threshold a complaint must meet to present a
> claim for potential coverage, and thereby raise a
> duty to defend, is minimal. Any doubts about
> potential coverage and the duty to defend are to be
> resolved in favor of the insured. The duty to
> defend is not annulled by the knowledge on the part
> of the insurer the allegations are untrue or
> incorrect or the true facts will ultimately exclude
> coverage.

_Chandler_, 702 N.E.2d at 638.

BICO also argues that the burden of showing that there is not

even the potential for coverage under the policy is on Travelers.

In _Employers Ins. of Wausau v. EHLCO Liquidating Trust_, No. 84684,

1999 Ill.LEXIS 3, *37-39, ___ N.E.2d ___ (January 22, 1999), the

Illinois Supreme Court stated that:

> Illinois law is well established that where an
> underlying complaint alleges facts within or
> potentially within policy coverage, the insurer is
> obliged to defend its insured even if the
> allegations are groundless, false, or fraudulent.
> The insurer may not refuse to defend unless it is
> clear from the face of the underlying complaint
> that the allegations fail to state facts which
> bring the case within, or potentially within, the
> policy's coverage. The underlying complaint and
> the policy must be construed in favor of the
> insured, with all doubts resolved in the insured's
> favor. . . [W]here a complaint alleges facts
> potentially within the policy's coverage, an

13

> insurer taking the position that a claim is not
> covered cannot simply refuse to defend the suit.
> Rather, the insurer must either defend the suit
> under a reservation of rights or seek a declaratory
> judgment that there is no coverage. If the insurer
> fails to take either of these actions, the estoppel
> doctrine applies.

Id.

BICO also contends that even if the complaint is not sufficient to establish the potential of coverage, the admitted knowledge of the insurer may suffice to do so. In Associated Indemnity Co. v. Insurance Co. of North America, 386 N.E.2d 529 (Ill. Ct. App. 1979), the court stated that:

> [E]ven though the complaint, standing alone, may not
> fairly apprise the insurer that the third party is suing
> the putative insured on an occurrence potentially within
> the policy's coverage, the insurer is obligated to
> conduct the putative insured's defense if the insurer has
> knowledge of true but unpleaded facts, which, when taken
> together with the complaint's allegations, indicate that
> the claim is within or potentially within the policy's
> coverage. . . To hold otherwise would allow the insurer
> to construct a formal fortress of the third party's
> pleadings and to retreat behind its walls, thereby
> successfully ignoring true but unpleaded facts within its
> knowledge that require it, under the insurance policy, to
> conduct the putative insured's defense.

386 N.E.2d at 536. BICO argues, based on Travelers' Summary Judgment Brief, that Travelers knew that Roberson was employed at an Illinois site and that the job was scheduled to take as long as sixty days. According to BICO, this information was sufficient to create the potential for coverage under the "principally localized" consideration of Illinois workers compensation law. Thus, claims

BICO, Travelers had a duty to defend the claim.[3]

BICO points out that Illinois courts have held that when an insurer wrongfully refuses to defend a complaint which alleges facts potentially within its coverage, it is liable to the insured for breach of contract. Thornton v. Paul, 384 N.E.2d 335 (Ill. 1978). BICO also notes that, according to Thornton, the measure for damages for such a breach is generally the amount of the judgment against the insured or of a reasonable settlement, plus any expenses incurred. Id. Further, in Northbrook Property and Cas. Ins. Co. v. USF&G, 501 N.E.2d 817 (Ill. Ct. App. 1986), the court held that a wrongful failure to defend estops the insurer from later raising policy exclusions or defenses in a subsequent action by the insured, or the insured's subrogee.

BICO also notes that the imposition of estoppel for the breach of an insurer's duty to defend is derived solely from the insurer's breach of contract rather than an analysis of all the surrounding

---

[3] In response to BICO's argument regarding the notice provided by the complaint, Travelers argues that the complaint clearly fails to indicate any connection of the claim to Illinois. The complaint at issue alleges only that an Alabama resident who is an employee of Louisiana Chemical was injured in Alabama and is entitled to benefits under the Alabama workers compensation law. The complaint does not mention Roberson's temporary employment at an Illinois work site and does not, in fact, mention Illinois at all. According to Zurich Ins Co. v. Raymark Industries, "When . . .the insurer has no potential obligation to indemnify, it has no duty to defend." 514 N.E.2d 150, 163 (Ill. 1987). Further, Crum stands for the principle that insurance policies should not be interpreted to "expand coverage beyond what is contracted for by the parties." Travelers contends that whether one relies on the complaint in the case or whether one relies on the facts as presented in its summary judgment motion, the facts of this case clearly do not trigger the coverage of the policy under Illinois workers compensation law.

circumstances.   <u>Sims v. Illinois National Cas. Co.</u>, 193 N.E.2d 123 (Ill. Ct. App. 1963).  Along those lines, the <u>Northbrook</u> court has noted that although another insurer may step in to meet the breaching insurer's obligation, such action by an alternative insurer does not relieve the breaching insurer of its duty, and the breaching insurer will still be estopped from raising policy exclusions or defenses in a subsequent action.  501 N.E.2d at 820. Further, when two insurance carriers have a duty to defend a mutual insured in a case where liability is imposed and where one of the insurers is estopped for wrongfully failing to defend, the carrier which is estopped must bear the full liability of defense costs and settlement or verdict, at least up to its policy limits.  <u>Aetna Casualty & Surety Co. v. Coronet Ins. Co.</u>, 358 N.E.2d 914 (Ill Ct. App. 1976); <u>Northbrook</u>, 501 N.E.2d at 821.  Thus, the <u>Northbrook</u> court stated:

> In cases where an insurer believes a policy does not provide coverage, its options are clear.  It must either defend under a reservation of rights, or secure a declaratory judgment as to its rights and obligations before trial or settlement of the underlying action. Where an insurer fails to take either course of action, its failure to defend is unjustified and it is estopped from later raising policy exclusions or defenses in a subsequent action by the insured, or the insured's subrogee.

501 N.E.2d at 820.  The <u>Northbrook</u> court went on to quote the <u>Coronet</u> court, stating:

> Estoppel arises as a direct result of the insurer's breach of contract . . . The contract becomes no less breached because of the fortuitous existence of another insurer who is willing to meet its own obligations.  The thrust of Illinois law places a burden upon the primary insurer rather than the insured or any other party, to fulfill its duty to

16

> defend and to take any action necessary to preserve
> its exclusionary defenses.

501 N.E.2d at 821, quoting Coronet, 358 N.E.2d at 917.

BICO argues that, although the majority of the Illinois cases
interpreting and applying the estoppel doctrine involve general and
automobile liability policies, the doctrine applies with equal
force to the wrongful refusal to defend a claim under a workers
compensation policy according to Amalgamated Roofing Co. v.
Travelers Ins. Co., 133 N.E. 259 (Ill. 1921).[4]

---

[4]BICO contends that the Amalgamated case is particularly
instructive in this case, in that it involved a decision on the
part of an insurer, (ironically) Travelers, to decline to defend
its insured based on the belief that the insured was not covered
for the injury in question because the claimant was not an
employee of the insured.  The court found that although Travelers
was, in the end, correct in concluding that the claim did not
fall under its policy, it was estopped to rely on this defense
because it had wrongfully refused to defend despite the potential
for coverage.  In reaching its conclusion, the court stated:

> [The insurer's] contentions are that the policy did not
> insure [the insured] as to [the claimant], because he
> was not, at the time he was injured, in the employ of
> the appellant but was an employee of . . . an
> independent contractor, while the contract on the part
> of [the insurer] to indemnify [the insured] was
> expressly limited to [the insured's] employees.
>                    . . . .
> By the policy [the insurer] not only undertook to pay
> the compensation provided by the Workmen's Compensation
> law, but also to defend, in the name and on behalf of
> the employer, any suits or other proceedings which
> might at any time be instituted against it on account
> of such injuries, including suits or other proceedings
> alleging such injuries and demanding damages or
> compensation therefor, although such suits, other
> proceedings, allegations or demands are wholly
> groundless, false or fraudulent.
>                    . . . .

17

The decision of the Industrial Commission . . . became
conclusive upon the appellant as an award of
compensation against it as [the claimant's] employer,
and a liability was thereby imposed upon it by law for
compensation because of his injury. The award is
conclusive on the appellant that [the claimant's]
administratrix was entitled to compensation because of
an accidental injury which arose out of and in the
course of the deceased's employment by the appellant.
The appellee, having contracted to defend that
proceeding and to indemnify the appellant against loss
by reason of the liability imposed upon it by law for
such damages is also bound by the award.

. . . .

[The insured] has argued that [the claimant] was an
employee of [the insured] at common law, but that is a
question of fact which was determined adversely to [the
insured] by the municipal court and the Appellate Court
and is not open for consideration here.

. . . .

The question, however, is not the controlling question
in this case. It was in the proceeding before the
Industrial Commission. . . It was not a question to be
determined by the municipal court whether [the
claimant] was an employee of [the insured] or not. The
question before that court was whether there was
liability imposed upon [the insured] by law for damages
on account of an injury to its employee. The law
provided a tribunal for the determination of that
question. The appellee agreed to defend for the
appellant any proceedings which might be brought
against the appellant on account of such injuries, even
though wholly groundless, false or fraudulent, and to
indemnify the appellant against loss by reason of the
liability imposed upon it by law.

[The insured] submitted to the trial court various
propositions of law and fact to be held by the court.
Among others was the following proposition of law: "The
court holds that by the finding and decision of the
Industrial Board of Illinois that Walter M. Frame was
an employee of the plaintiff, and by failure and refusal
of the defendant to review the same, the
defendant is estopped to deny that the said Walter M.
Frame was at the time he received the injuries which
caused his death, an employee of the plaintiff and that

18

BICO claims that principles adhered to in cases such as Amalgamated, Chandler, Crum, and Northbrook clearly indicate that Travelers owed Louisiana Chemical a duty to defend the Roberson claim, despite the fact that the claim may not have been viable. BICO stresses that the possibility of coverage under the policy existed and that Travelers therefore was faced with the decision of either defending the suit or seeking a declaratory judgment. As Travelers did neither, claims BICO, it is liable to Louisiana Chemical according to the standard for damages calculation as laid out in Northbrook.[5]

---

> the finding of said Industrial Commission is final, conclusive and binding upon the defendant in this action."
>
>    The court refused this proposition, and it was error to do so.
>
> > The judgments of the Appellate Court and the municipal court will be reversed and the cause will be remanded to the municipal court.

133 N.E. at 261-63.

[5] BICO also argues, and Travelers never squarely denies, that Roberson's failure to file a claim in Illinois is irrelevant in determining whether coverage will apply in this case. BICO notes, citing Smith & Chambers Salvage v. Insurance Management Corp., 808 F. Supp. 1492 (E.D. Wash. 1992); Toebe v. Employers Mutual of Wausau, 114 N.J.Super. 39, 274 A.2d 820 (App.Div. 1992); Siemen v. Postorino Sandblasting and Painting Company, 111 Mich. App. 710, 314 N.W.2d 736 (1981); American Mut. Ins. Co. v. Duvall, 117 H.H. 221, 372 A.2d 263 (1977); Thomas v. Transport Ins. Co., 532 S.W.2d 263 (Tenn. 1976); Kacur v. Employers Mutual Cas. Co., 253 Md. 500, 254 A.2d 156 (1969); and Weinberg v. State

## B. Factual Issues in "Principally Localized" Determination

BICO contends that even if the court finds its estoppel argument unpersuasive, Travelers' motion should still be denied because of the factual issues surrounding the determination of whether Roberson was an "employee" for the purposes of Illinois workers compensation law. BICO does not dispute Travelers contention that Roberson's contract for hire was not made in Illinois or the fact that the accident occurred outside of Illinois. However, BICO notes that although these considerations are to be considered in conjunction, a single one of the considerations may suffice to establish jurisdiction in an appropriate instance. In this case, BICO contends that the "principally localized" factor has not been adequately proven and should thus be left as a factual issue.

BICO does not contest Travelers' presentation of the relevant Illinois case law, but claims that the case at bar is distinguishable from Patton and Montgomery Tank Lines. The cases cited by Travelers differ from this case, according to BICO, in that both Patton and Montgomery Tank Lines concerned the determination of whether or not persons involved in interstate trucking were "employees" for the purposes of Illinois law. Both

Workmen's Insurance Fund, 368 Pa. 76, 81 A.2d 906 (1951), that several jurisdictions have held that where a policy covering workers compensation liability for a single jurisdiction, there will be coverage despite the claimant's having filed elsewhere.

courts found that the mere fact that a truck driver spends most of his time on the road in a given state does not establish that his employment is "principally localized" in that state.   This case differs from those cited by Travelers, according to BICO, in that Roberson was, in this instance, actually assigned to work in Illinois for a period of time. BICO acknowledges that the existence of a place of business in a state – the establishment of a situs – is key in determining whether or not a person's work is "principally localized" in that state.   However, BICO questions Travelers' assertion that Louisiana Chemical clearly lacked such a situs in this case.   According to BICO, a question exists as to whether Roberson's assignment to an out-of-state job site for no more than sixty days, creates a "place of business" in the state, and thus a principal localization sufficient to establish him as an "employee" and to create jurisdiction under the Illinois workers compensation statutes.   BICO contends that Roberson's situation differs significantly from the case of a truck driver driving through a state who lacks a specific location in that state where he is expected to appear on a daily basis for some period of time.

BICO notes that the only Illinois case law directed at this issue is <u>Associates Corp. of North America v. Industrial Commission</u>, 522 N.E.2d 102 (Ill. Ct. App. 1988).   In <u>Associates Corp.</u>, the claimant, an Illinois resident, was an executive for a holding company which directed the operations of several insurance

21

companies. The claimant's employment contract was entered into in Indiana and his employer was a Texas corporation. He had a home office, but traveled extensively. During one of his trips, he was killed in Rhode Island. The court was faced with the question of whether his employment was "principally localized" in Illinois. The court found that Illinois had jurisdiction.

BICO appears to contend that in the absence of persuasive Illinois authority on this issue, it is appropriate to look at case law from other states interpreting the term "principally localized," especially if such case law cites Patton and is, like Patton and Montgomery Tank Lines, purportedly decided according to the Model Code. BICO thus directs the court's attention to Todacheene v. G&S Masonry, 116 N.M. 478, 863 P.2d 1099 (N.M. Ct. App. 1993), claiming that the New Mexico Appeals Court's reasoning in that case supports its claim that the "principally localized" issue in this case is indeterminate.[6] BICO points to the fact that

---

[6] Todacheene involved a claimant employed on an "as needed" basis by a company located in Colorado who performed masonry work in Colorado, Arizona, and New Mexico. The claimant worked at three New Mexico sites, then at two Arizona locations. During work at the second Arizona location, he was injured. He attempted to claim benefits in New Mexico. In interpreting the "principally localized" language of the New Mexico workers compensation statutes, the Todacheene court, like the Patton court, looked to the Model Code in order to determine the meaning of the phrase "his employer has a place of business in this . . . state and he regularly works at or from such place of business." The court, in deciding whether a construction site could be considered a place of business for a contractor, reasoned that a "place of business" was analogous to the concept of a "business domicile" or "business home." The court then concluded that

22

both the <u>Patton</u> and <u>Montgomery Tank Lines</u> cases concluded that the
"principally localized" question was a "question of fact," and
argues that Travelers has not presented evidence in this case to
establish as a matter of law that the worksite was not a "business
home" for Louisiana Chemical.[7]

### CONCLUSIONS OF COURT

Without reaching the choice of laws issue, which might not be
different for Illinois, Texas, or Alabama, this court concludes
that even under Illinois law, as argued by BICO, Travelers has no

---

Arizona did not constitute a "business home" in that case,
stating:

> Does a construction work site constitute a "business
> home"? It depends. When the principal contractor on a
> major construction project that will take a number of
> months to complete sets up a trailer with telephones,
> etc., that serves as a business office, the site is
> sufficiently substantial to be a business home. On the
> other hand, when a subcontractor sends some workers to
> a site for a few days' work on a project, the
> subcontractor has not established a business home.
>         . . . .
> Ordinarily the presence of an office will be the
> controlling factor in determining whether a contractor
> or subcontractor has a place of business at a
> construction site. An office would usually constitute
> a "business home."

116 N.M. at 484. BICO contends that the reasoning of this New
Mexico court leaves open the question of whether Louisiana
Chemical had a "business home" in Illinois and, thus, whether
Roberson's employment was principally localized in Illinois.

[7] Note that it is BICO, not an Illinois court, that uses the
"business home" language. The actual question is whether
Travelers has established the fact that Roberson's work was not
"principally localized" in Illinois. To date, under Illinois
law, this means examining whether or not Louisiana Chemical has a
"place of business" in the state.

liability.   This conclusion is based on the court's determination that Roberson's "underlying complaint [did not] fall within, or potentially within," Traveler's policy's coverage provisions. Roberson was no longer an Illinois employee.  The situation is no different than if he had been injured at an Alabama job site. Query: How long would Travelers have covered Roberson on job sites in Alabama and elsewhere?   Roberson made no claims for benefits under Illinois law.  He claimed benefits under Alabama law in an Alabama court.   There is no reasonable basis for arguing that Travelers should have undertaken to defend the Alabama case when it had no coverage and BICO did.

Traveler's motion for summary judgment will be granted.  There is no genuine issue of fact and there was no duty to defend, thus no estoppel and no claim by BICO.

This _____ day of September, 1999.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE

24